UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE STOVAL,<br><br>        Plaintiff,<br><br>    v.<br><br>BASIN STREET PROPERTIES,<br><br>        Defendant. | Case No.  12-cv-04661-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 38 |

      Plaintiff Wayne Stoval ("Plaintiff") has brought a Complaint ("Complaint") against Defendant Basin Street Properties ("Defendant") for wrongful discharge in violation of public policy, breach of the implied covenant of good faith and fair dealing, and negligence.  Complaint, Exh. A. to ECF No. 1.  Defendants have moved for summary judgment, or in the alternative, partial summary judgment on each of Plaintiff's claims.  ECF No. 38.  After considering the papers and the arguments of the parties at the hearing held November 7, 2013, and good cause appearing, for the reasons set forth below the Court hereby GRANTS IN PART and DENIES IN PART the motion for summary judgment.

## I.   BACKGROUND

### A.   Factual Background

      In November 2007, Defendant hired Plaintiff as a Facilities Building Engineer in its Reno, Nevada location.  Deposition of Plaintiff Wayne Stoval ("Stoval Depo."), Exh. B to Defendant's Motion for Summary Judgment, ECF No. 39-1, at 30:17-31:13.  In October 2008, Plaintiff transferred to Defendant's Petaluma, California location.  Id., at 35:21-24; Declaration of James Clay ("Clay Decl."), ECF No. 35, at ¶ 1.  As a Facilities Building Engineer, Plaintiff's responsibilities included repairing and maintaining air conditioners and other devices that utilized

1  refrigerants. Stoval Depo., at 88:14-18. Plaintiff also inspected exit lights, light fixtures, and fire
2  extinguishers. Id. at 88:21-89:4. At all times while Plaintiff was employed by Defendant,
3  Plaintiff was an at-will employee. Id. at 32:19-34:4.

4  While employed in Petaluma, Plaintiff was directly supervised by Chief Engineer James
5  Clay. Clay Decl., at ¶ 1; Stoval Depo., at 27:10-12. Clay in turn was supervised by Engineering
6  Manager Robert Linnell. Declaration of Robert Linnell ("Linnell Decl."), ECF No. 34, at ¶ 1;
7  Stoval Depo., at 27:13-22.

8  In the fall of 2009, Plaintiff reported to Linnell that he believed co-worker Jeff Rylance
9  had illegally connected cable television service to an apartment inhabited by Rylance's son, which
10  was owned by Defendant. Stoval Depo., at 48:6-14, 82:13-83:3; Clay Decl. ¶ 2. Linnell asked
11  Clay to investigate the matter. Clay Decl., at ¶ 2; Stoval Depo., at 48:15. Following Plaintiff's
12  initial reporting, Plaintiff and Linnell did not have any further conversations regarding the cable
13  theft. Stoval Depo., at 83:9-11.

14  On April 16, 2010, Linnell and Clay met with Plaintiff to discuss their concerns about
15  Plaintiff's work performance, and presented Plaintiff with a one-page memo outlining areas in
16  which Plaintiff needed to improve. Clay Decl., ¶ 3; Linnell ¶ 3; Stoval Depo., at 99:24-100:16.
17  During the course of the meeting, Plaintiff became angry, used profane language, and eventually
18  walked out of the meeting. Stoval Depo., at 104:5-22; Clay ¶ 4; Linnell ¶ 4.

19  After the meeting, Human Resources Manager Anthony Romero contacted Plaintiff.
20  Declaration of Anthony Romero, ECF No. 36, ¶ 3. Shortly thereafter, Romero called Plaintiff and
21  left him a phone message, asking Plaintiff to return his keys to buildings belonging to Defendant.
22  Romero Decl., ¶ 4.

23  Most of the remaining material facts are in dispute and are discussed *infra* at Part II.

24  **B.   Procedural History**

25  In April 2012, Plaintiff filed this Complaint against Defendants Basin Street Properties and
26  James Clay in Sonoma County Superior Court, alleging wrongful discharge in violation of public
27  policy, breach of the implied covenant of good faith and fair dealing, and negligence. SCV-
28  251443. Defendant removed to this Court in September 2012, asserting that Plaintiff and

United States District Court
Northern District of California

Defendant Basin Street Properties are citizens of states other than California, and that Defendant Clay was fraudulently joined. Notice of Removal of Action Under 28 U.S.C. § 1441 (Notice of Removal), ECF No. 1.

In September 2012, Plaintiff dismissed Defendant Clay from the suit. Notice of Dismissal of James Clay Without Prejudice, ECF No. 13.

On October 3, 2013, Defendant filed a motion for summary judgment, which this Court now considers.

### C. Jurisdiction

As stated in the Notice of Removal, Plaintiff is an Arizona citizen, and Defendant is a Nevada corporation with its principal place of business in Reno, Nevada, and the amount in controversy exceeds $75,000. Jurisdiction is therefore proper pursuant to 28 U.S.C. § 1332(a) (federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States").

### D. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Summary judgment must be supported by "facts as would be admissible in evidence." Fed. R. Civ. Pro. 56(e). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." Id., 477 U.S. at 323. The court draws all reasonable factual inferences in favor of the non-movant. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). "[A]t the summary judgment stage," courts are "not permitted to weigh evidence." Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1121 (9th Cir. 2010).

Where the moving party would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. Id., at 1102–03.

## II.    ANALYSIS

Defendant moves for summary judgment on the grounds that, as a matter of law, Plaintiff cannot prevail on any of his claims on the basis of his allegations that he was terminated because he (1) complained about a crude email he received, and (2) reported cable theft committed by a coworker to his supervisor. Additionally, Defendant argues that Plaintiff cannot establish his claim for wrongful termination in violation of public policy because the evidence establishes that there was no implication of a public policy, plaintiff's employment was not terminated, and that there was no causal connection between plaintiff's allegations and his alleged termination.

As an initial matter, Plaintiff's complaint alleges, in his wrongful termination and negligence causes of action, that he was terminated in part "because he complained about pornographic e-mails." Complaint ¶¶ 9, 19. According to Plaintiff's own testimony, he admits that although he suspected that Rylance sent the email, he does not know who sent the email, and he also acknowledges that he never spoke to any of his coworkers about the email. Stoval Depo., at 45:16-46:12. Plaintiff has produced no evidence that he ever complained about the email to anybody within the company. After resolving all reasonable inferences in Plaintiff's favor, the Court concludes that no reasonable finder of fact could conclude on the basis of applicable law that Plaintiff was terminated for complaining about receiving the email.

Accordingly, the remainder of the Court's analysis relates only to Plaintiff's allegation that he was terminated for reporting cable theft committed by a coworker.

### A.    Wrongful Discharge in Violation of Public Policy

Under California law, an exception to the employment at-will doctrine is recognized where

4

the employee's termination was the result of a violation of the fundamental principles of public policy. Tameny v. Atl. Richfield Co., 27 Cal. 3d 167, 170 (1980). In such cases, "the discharged employee may maintain a tort action and recover damages traditionally available in such actions." Id. To prevail on a claim for wrongful discharge in violation of public policy, a plaintiff must establish that (1) an employer-employee relationship existed; (2) plaintiff's employment was terminated; (3) the violation of public policy was a motivating reason for the termination; and (4) the termination was the cause of plaintiff's damages. Haney v. Aramark Unif. Servs., Inc., 121 Cal. App. 4th 623, 641 (Cal. Ct. App. 2004).

Defendant seeks summary judgment on the grounds that Plaintiff's employment termination did not implicate a fundamental public policy, that Plaintiff's employment was not terminated by Defendant, and that there was no nexus between Defendant's alleged retaliation and Plaintiff's alleged protected activity. The Court examines each argument in turn.

   1.   **Public Policy**

To support a claim for wrongful discharge in violation of public policy, the underlying policy must be (1) supported by either constitutional or statutory provisions; (2) "public" in the sense that it "inures to the benefit of the public" rather than merely serving the interests of individuals; (3) well-established at the time of plaintiff's discharge; and (4) "fundamental" and "substantial." Stevenson v. Super. Ct., 16 Cal. 4th 880, 889-90 (1997).

Although Plaintiff does not specify which statutory provision is implicated by his allegation, it is evident from Plaintiff's argument that he relies on Section 1102.5 of the California Labor Code, which states in relevant part that "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute . . .." Cal. Lab. Code § 1102.5(b). Here, Plaintiff disclosed to Linnell that Rylance was committing cable theft, which is specifically prohibited under the California Penal Code. See Cal. Penal Code § 593d(a)(1) (a person is guilty of a public offense is he or she "[k]nowingly and willfully makes or maintains an unauthorized connection or connections . . . to any cable, wire, or other component of a multichannel video or information services provider's system"). Although

there is no evidence suggesting that Plaintiff reported the suspected cable theft to law enforcement agencies, Section 1102.5 "evince[s] a strong public interest in encouraging employee reports of illegal activity in the workplace." Collier v. Super. Ct., 228 Cal. App. 3d 1117, 1123 (Cal. Ct. App. 1991). In Collier, the California Court of Appeal noted:

> If public policy were strictly circumscribed by [Section 1102.5] to provide protection from retaliation only where employees report their reasonable suspicions directly to a public agency, a very practical interest in self preservation could deter employees from taking any action regarding reasonably founded suspicions of criminal conduct by coworkers. Under that circumstance, an employee who reports his or her suspicions to the employer would risk termination or other workplace retaliation. If this employee makes a report directly to a law enforcement agency, the employee would be protected from termination or other retaliation under [Section 1102.5], but would face an obvious disruption of his or her relationship with the employer, who would be in the unfortunate position of responding to a public agency without first having had an opportunity to deal internally with the suspected problem. These discouraging options would leave the employee with only one truly safe course: do nothing at all.

Id. at 1123-24. Accordingly, for the purposes of a wrongful discharge in violation of public policy claim, Plaintiff is not required to establish that he reported the suspected illegal activity to law enforcement officials.

Defendant also argues that Plaintiff's reporting on cable theft bestowed a benefit not to the public, but rather, to the third-party cable company and, to a limited extent, to Defendant itself. In support of its argument, Defendant relies on Foley v. Interactive Data Corp., , in which the California Supreme Court held that statutes which "simply regulate conduct between private individuals, or impose requirements whose fulfillment does not implicate fundamental public policy concerns" are not "public." 47 Cal. 3d 654, 669 (1988). Defendant also relies on language from the Ninth Circuit, which stated that the reporting of coworkers' illegal activities, while serving the "laudable goal" of preventing crime, was "not enough to fit within the narrow confines of wrongful termination in violation of public policy." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1080 (9th Cir. 2003).

Under California law, it implicates a public policy to terminate an employee's employment as a result of his or her reporting criminal activity. Here, the alleged misconduct involves a

6

1  violation of the California Penal Code.  Where the policy implicated is reflected in a provision of
2  the Penal Code, the policy is deemed fundamental or substantial, and inures to the benefit of the
3  public rather than merely serving the interests of individuals.  Haney, 121 Cal. App. 4th at 642-43.
4  This "reflects a duty imposed by law upon all employers in order to implement the fundamental
5  public policies embodied in the state's penal statutes."  Id. at 643.  The Collier court also
6  recognized that there is a compelling and "fundamental public interest in a workplace free from
7  crime."  Id. at 1127.  "Attainment of this objective requires than an employee be free to call his or
8  her employer's attention to illegal practices . . .."  Id. at 1125.  "Retaliation by an employer when
9  an employee seeks to further this well-established public policy by responsibly reporting
10 suspicions of illegal conduct to the employer seriously impairs the public interest."  Id. at 1127.

11     Against the backdrop of Haney and Collier, which explicitly acknowledge that reporting
12 criminal activity implicates a public policy, Defendant's authorities are less compelling.

13     Rivera was decided before Haney, in which the California Court of Appeal held that
14 reporting allegations of criminal fraud implicated public policy.  121 Cal.App.4th at 642-43.
15 Moreover, the Rivera court relied exclusively on American Computer Corp. v. Superior Court,
16 213 Cal. App. 3d 664 (Cal. Ct. App. 1989), a case that the Collier court found to be inconsistent
17 with later California cases.  In American Computer, the California Court of Appeal held that a
18 plaintiff, who reported suspected embezzlement within the company to his employer, could not
19 allege that he was discharged in violation of public policy because no interest other than the
20 employer's was served.   213 Cal. App. 3d at 668.  The court in Collier first noted that the victim
21 of the alleged misconduct in American Computer was the employer itself, rather than members of
22 the public.  Collier, 228 Cal. App. 3d at 1126.  The court then noted that "[t]he court in American
23 Computer focused on the absence of the employer's attempt to coerce the employee to engage in
24 criminal conduct and the absence of a direct violation of a statute protecting the employee's
25 rights."  Id. (citing American Computer, 213 Cal. App. 3d at 668).  However, as the Collier court
26 noted, the California Supreme Court rejected the premise that a wrongful discharge in violation of
27 public policy was limited to instances where the employer demanded that the employee engage in
28 criminal conduct in Rojo v. Kliger, 52 Cal. 3d 65, 91 (Cal. 1990).  "To the contrary, . . . an action

for wrongful discharge will lie when, as here, the basis of the discharge contravenes a fundamental public policy." Id. Accordingly, "[t]he absence of such coercion and restraint does not defeat a legal action for wrongful termination." Collier, 228 Cal. App. 3d at 1127.

In the other case on which Defendants rely, Foley, the plaintiff did not report ongoing criminal activity; he reported that another employee was under investigation by the F.B.I. for having embezzled from his *previous* employer. 47 Cal.3d at 670. The duty the Supreme Court said it was rejecting as insufficient to support a wrongful termination claim was a purported "duty to report information relevant to his employer's interest," not a duty to report criminal activity. Id. at 670. It was for that reason that Collier concluded that a case involving ongoing criminal activity "involves public policy implications not presented in Foley." 227 Cal.App.3d at 1122. Haney and Collier did not consider Foley to bar wrongful termination claims which are premised on an employee reporting criminal activity. Neither does this Court.

### 2. April 16 Termination

Defendant argues that Plaintiff has not produced sufficient evidence to show that there is a genuine issue of material fact as to whether Plaintiff's employment was actually terminated by Defendant on April 16, 2010. According to Plaintiff's testimony, as he was walking out of the April 16 meeting, Plaintiff said to Clay and Linnell, "I'm not going to quit, you're either going to fire me -- I'm not going to quit." Twenty minutes after he spoke to Romero, Romero left a voicemail for Plaintiff, asking him to "turn in your stuff," including his uniforms and keys to Defendants' commercial buildings. Stoval Depo. 110:5-22. It was at this time that Plaintiff claims he believed his employment was terminated. This testimony could support a factfinder's conclusion that Defendant terminated Plaintiff's employment.

Defendant argues that the evidence indicates that Plaintiff was not terminated on April 16 as he claims. Rather, Defendant asserts that Plaintiff's employment was terminated on April 19 pursuant to Defendant's workplace policy, by failing to show up for work or call to notify that he was not going to work that day. Stoval Depo. 158:13-159:22. Defendant's evidence includes, for example, the fact that no employee or supervisor told Plaintiff that his employment was being terminated, that both Linnell and Clay believed that Plaintiff had quit when he abruptly left the

8

meeting, and that Defendant had attempted to talk to Plaintiff shortly after the April 16 meeting in an attempt to persuade Plaintiff to continue his employment. Clay Decl., at ¶¶ 5-6; Linnell Decl., at ¶¶ 5-6; Romero Decl., at ¶ 4. Defendant argues that if Linnell and Clay had terminated Plaintiff's employment, Clay would have had no reason to ask Plaintiff to meet with Romero to resolve the issues that arose during the April 16 meeting.

While this evidence might weigh against Plaintiff's testimony, it does not negate it. Plaintiff's testimony about his termination focuses on the events *after* the meeting, namely that Romero attempted to call Plaintiff and ask that he turn in his uniforms and keys to Defendant's commercial buildings, items that Plaintiff needed in order to continue his employment. After drawing every reasonable inference in the light most favorable to Plaintiff, the Court finds that a factfinder could reasonably conclude that Plaintiff's employment was terminated on April 16.

### 3. Nexus

In order to establish that a plaintiff was wrongfully discharged in violation of public policy, the plaintiff must be able to "demonstrate the required nexus between his reporting of alleged statutory violations and his allegedly adverse treatment." Turner v. Anheuser–Busch, Inc. 7 Cal. 4th 1238, 1258 (1994), overruled on other grounds in Romano v. Rockwell Internat., Inc., 14 Cal. 4th 479, 498 (1996). This requirement is "rooted in the commonsense notion that one cannot be motivated by an event or condition of which one is wholly ignorant." Reeves v. Safeway Stores, Inc. 121 Cal. App. 4th 95, 107 (Cal. Ct. App. 2004). Where the employee's conduct is "completely unknown to his or her employer, no act by the employer can be said to have been taken 'because of' those activities." Id.

Defendant does not dispute that it had knowledge of Plaintiff's protected activity. The evidence clearly establishes that Plaintiff reported the suspected cable theft to Linnell and that Linnell asked Clay to investigate the matter. Rather, Defendant moves for summary judgment on the grounds that there was no causal connection between the reporting of the cable theft and Plaintiff's alleged termination because the events occurred six months apart.

To permit an inference of a causal nexus, the employer's action must follow from the employee's protected activity "within a relatively short time." Loggins v. Kaiser Permanente Int'l,

1   151 Cal. App. 4th 1102, 1110, n.11 (Cal. Ct. App. 2007).  In Turner, the California Supreme Court
2   held that because the plaintiff's conduct occurred four to five years before the negative
3   performance evaluations that he alleged caused him to quit, he failed to "demonstrate the required
4   nexus between his reporting of alleged statutory violations and his allegedly adverse treatment by
5   [the employer]."  7 Cal. 4th at 1258.  In Flait v. North American Watch Corp., the California
6   Court of Appeals held that, at the summary judgment phase, because the plaintiff's employment
7   was terminated four months after he confronted a supervisor about his vulgar remarks to a
8   subordinate, there was sufficient evidence from which a fact finder could conclude that there was a
9   nexus between the plaintiff's conduct and his termination.  3 Cal. App. 4th 467, 478 (Cal. Ct. App.
10  1992).

11         Here, the Court finds that a six-month period between Plaintiff's conduct and his
12  termination is not such an unreasonably long period of time that Plaintiff cannot recover as a
13  matter of law.  And regardless of the duration in time between the reporting of the illegal activity
14  and the alleged termination, a causal nexus can be inferred if "between these events the employer
15  engages in conduct consistent with retaliatory intent . . .."  Wysinger v. Auto. Club of So. Cal.,
16  157 Cal. App. 4th 413, 421 (2007).  Here, Plaintiff provides evidence of such conduct.  According
17  to Plaintiff's deposition, he believed that Linnell disclosed the fact that Plaintiff had reported the
18  suspected cable theft, after Rylance told Plaintiff that he knew Plaintiff had reported the theft.
19  Stoval Depo. 83:12-21.  Shortly after he reported the suspected cable conduct, he received
20  assignments requiring him to fix clogged toilets and drains for a one-month period.  Id. 41:12-20,
21  44:6-11.  Additionally, Plaintiff received the crude email which was sent from Rylance's phone,
22  which he interpreted as somebody calling him a "fucking asshole."  Id. at 44:24-45:13.  Plaintiff
23  also suspected that somebody put nails in one of his tires in December 2009.  Id. at 86:15-25.
24  Shortly before the April 16 meeting, Plaintiff felt pressured by Clay to come to work despite being
25  ill with the flu.  After deciding he could no longer work, Plaintiff decided to sleep in his car.  Clay
26  found Plaintiff sleeping, and upon learning that he was ill, told Plaintiff that he should have called
27  in sick.  Id., at 98:1-15.  Yet, on the April 16 meeting, the incident was used as an example by
28  Clay and Linnell of Plaintiff's subpar work performance.  Depo., at 98:15-24.

Defendant does nothing to negate Plaintiff's evidence other than to state that none of the instances proves that retaliation occurred. After resolving all reasonable inferences in Plaintiff's favor, the Court concludes that a reasonable finder of fact could conclude that there was a nexus between Plaintiff's reporting of cable theft and his alleged termination.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Every contract possesses an implied covenant of good faith and fair dealing in which "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Foley v. Interactive Data Corp., 47 Cal. 3d 654, 684 (1988). "The precise nature and extent of the duty imposed . . . will depend on the contractual purposes." Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818 (Cal. 1979). Actions for breaches of the implied covenant are based on contract principles and are therefore limited to contract damages. Foley, 47 Cal. 3d at 683-84.

Defendant moves for summary judgment on the grounds that the at-will nature of Plaintiff's employment cannot be overcome by an implied agreement to the contrary. Defendant relies on Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317 (Cal. 2000). In Guz, the California Supreme Court held that the discharge of an at-will employee does not constitute a breach of the implied covenant of good faith and fair dealing. Id. at 326-27. "[W]hile the implied covenant requires mutual fairness in applying a contract's actual terms, it cannot substantively *alter* those terms." Id. at 327. "If an employment is at will, and thus allows either party to terminate for *any or no reason,* the implied covenant cannot decree otherwise." Id. The court in Guz mentioned, in dicta, a possible exception to the rule:

> We do not suggest the covenant of good faith and fair dealing has no function whatever in the interpretation and enforcement of employment contracts. As indicated above, the covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits. Thus, for example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned.

Id. at 353, n. 18. However, Plaintiff makes no such claim that would conform to this exception, and the evidence does not support such an inference.

11

In his opposition, Plaintiff attempts to factually distinguish the present action from Guz, mainly by pointing out that Guz did not involve a wrongful termination claim. Plaintiff does not explain why this distinction makes a difference. Plaintiff also cites to cases allowing "bad faith" claims to stand despite the at-will nature of the plaintiff's employment, but all of those cases were decided prior to Guz.

Defendant is entitled to judgment as a matter of law on Plaintiff's action for breach of the implied covenant of good faith and fair dealing.

### C. Negligence

Defendant moves for summary judgment as to Plaintiff's negligence claim on the grounds that such claims are preempted by California's workers' compensation scheme. Under California law, the state's workers' compensation scheme provides the exclusive remedy for injuries caused by employer misconduct and sustained during the normal course of employment. Cole v. Fair Oaks Fire Protection Dist., 43 Cal. 3d 148, 160 (Cal. 1987); see Cal. Lab. Code § 3600(a) ("Liability for the compensation provided . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . ."); Cal. Lab. Code § 3601(a) ("the right to recover such compensation, pursuant to the provisions of this division is . . . the exclusive remedy for injury . . . against any other employee of the employer acting within the scope of his or her employment . . . ."). Negligence claims arising from conduct that occurs during the employment is barred by the exclusive remedy provisions. Coit Drapery Cleaners Inc. v. Sequoia Ins. Co., 14 Cal. App. 4th 1595, 1606 (Cal. Ct. App. 1993).

Plaintiff argues that an employee may bring a negligence claim if the injuries are the result of employer misconduct that is not within the normal course of the employer-employee relationship. "When an employer's decision to discharge an employee results from an animus that violates the fundamental policy of this state . . ., such misconduct cannot under any reasonable viewpoint be considered a 'normal part of the employment relationship' or a 'risk reasonably encompassed within the compensation bargain.'" Gantt v. Sentry Ins., 1 Cal. 4th 1083, 1100 (Cal. 1992), overruled on other grounds by Green v. Ralee Eng'g Co., 19 Cal. 4th 66, 80 n.6 (Cal.

1998). Plaintiff contends that because his negligence claim is predicated on his allegations that he was wrongly terminated in violation of public policy, his claim is not barred by California's worker's compensation scheme.

The exclusive remedy provisions are applicable here. "[B]oth the act of termination and the acts leading up to termination necessarily arise out of and occur during and in the course of the employment." Shoemaker v. Myers, 52 Cal. 3d 1, 20 (Cal. 1990). While an exception is recognized for claims that arise from an employer's violation of fundamental public policy, it "is aimed at permitting a [wrongful discharge in violation of public policy] action to proceed despite the workers' compensation exclusive remedy rule." Miklosy v. Regents of Univ. of California, 44 Cal. 4th 876, 902-03 (Cal. 2008). Here, Plaintiff has already brought a claim for wrongful discharge in violation of public policy. Accordingly, Defendant is entitled to judgment as a matter of law that Plaintiff's negligence claim is barred by California's exclusive remedy provisions.

### D.     Punitive Damages

Defendant has moved for summary judgment that Plaintiff cannot recover punitive damages in this action. In his opposition, Plaintiff voluntarily has voluntarily withdrawn his prayer for punitive damages. The Court will grant summary judgment in Defendant's favor on Plaintiff's claim for punitive damages.

## III.     CONCLUSION

Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Summary judgment is granted to Defendant on Plaintiff's claims of negligence and breach of the implied covenant of good faith and fair dealing, and with respect to Plaintiff's claim for punitive damages. Summary judgment is denied as to Plaintiff's claim of wrongful discharge in violation of public policy.

**IT IS SO ORDERED.**

Dated: November 12, 2013

JON S. TIGAR
United States District Judge